UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEROME JOSEPH McFIELD,

          Petitioner,

v.

DANIEL W. WHITE,

          Respondent.

Case No. C21-5250-RJB-SKV

REPORT AND RECOMMENDATION

INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Jerome McField is a state prisoner who is currently confined at the Washington Corrections Center ("WCC") in Shelton, Washington.  He has filed, through counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2254 seeking relief from his 2018 Pierce County Superior Court judgment and sentence.[1]  Dkt. 1.  Respondent has filed an answer to the petition and has submitted relevant portions of the state court record.  Dkts. 8, 9.  Petitioner has filed a response to Respondent's answer.  Dkt. 10.  This Court, having reviewed the petition, all briefing

---

[1] Petitioner is currently represented by attorney Brett Purtzer.  Mr. Purtzer also represented Petitioner in post-conviction proceedings in Pierce County Superior Court and on appeal.

REPORT AND RECOMMENDATION
PAGE - 1

of the parties, and the balance of the record, concludes that Petitioner's petition for writ of habeas corpus should be denied and this action should be dismissed with prejudice.

## FACTUAL BACKGROUND

The Washington Court of Appeals, on direct appeal, summarized the facts underlying Petitioner's conviction as follows:

> On June 28, 2016, the State charged McField with one count of assault in the first degree with a firearm enhancement, one count of unlawful possession of a firearm in the first degree, and one count of obstructing a law enforcement officer. The State later added two additional counts of assault in the first degree each with firearm enhancements, one count of drive-by shooting, and three counts of assault in the second degree with firearm enhancements. At arraignment, McField entered a not guilty plea on all counts.
>
> McField was represented by attorney Matthew McGowan. McField's charges arose out of three separate instances that could have been tried separately. McGowan estimated that if McField lost at trial, his sentence would have been in the "35- to 45-year range, but that with [sic] depending on how many trials there were and how a judge decided to sentence at the end, it could be up to 50 or 60 years."
>
> The State offered McField a plea deal with a recommended sentence of 15 years. McField reviewed the plea offer with McGowan.
>
> On July 24, 2017, McField accepted the deal and pleaded guilty to one count of assault in the first degree with a firearm sentencing enhancement, and one count of unlawful possession of a firearm in the first degree. McField signed the statement of defendant.
>
> McField was crying when he entered into the plea deal. McField told the judge that he had reviewed the agreement, that he was waiving his rights to trial, and that no one was forcing him to accept the plea deal.
>
> [MCGOWAN]: . . . I believe he's moving forward today with his plea knowingly, intelligently and voluntarily.
> THE COURT: Mr. McField, good morning. Do you agree with everything Mr. McGowan, your attorney, just said?
> [MCFIELD]: Yes, Your Honor.
> THE COURT: Have you had the opportunity to thoroughly review the Statement of Defendant on Plea of Guilty with Mr. McGowan?
> [MCFIELD]: Yes, Your Honor.

       THE COURT: Did he answer all of your questions about the form, about the decision to plead guilty, and about your case?
[MCFIELD]: Yes, sir.

       The court accepted the plea, finding that McField entered into the guilty plea knowingly, voluntarily, and intelligently.

       The day after entering the guilty plea, McField told McGowan that he wanted to withdraw the guilty plea. McGowan acknowledged that McField was not happy about the plea and that another attorney, Robert Quillian, took over the case soon after.

       McField filed a motion to withdraw his guilty plea. The hearing on the motion was held on April 17, 2018. At the hearing, McField confirmed that he signed the statement of defendant, but said that he was coerced into accepting the plea because trial was scheduled to start that day. McField said that McGowan told him "that the plea was the best way to go; that if I continued, that trial was going to start that day and that I had no defense and that I was going to get 60 to 80 years if I didn't take the deal."

       McField testified that at the time he entered the guilty plea, he did not believe that he was voluntarily entering into a plea. McField also testified that he never had the opportunity to review the police reports in his case. McGowan and his assistant defense counsel, Kelley Kavanaugh, testified about reviewing the discovery, including the police reports, with McField.

       The court found that McGowan

> provided the defendant with effective assistance of counsel through the duration of the representation and was prepared to proceed to trial had the defendant chosen not to accept the guilty plea. Mr. McGowan, however, did not show [McField] the police reports or provide him a copy for his own use. He did however convey the substance of the police reports and other discovery during their consultations.

       The trial court found that McField did not meet his burden to establish a manifest injustice that would warrant the withdrawal of his guilty plea, concluding that the "defendant entered that plea knowingly, voluntarily, and intelligently. He made the decision to plead guilty and forgo his trial after full consultation with his attorney. That attorney more than adequately assisted the defendant in the decision of whether to plead guilty." The court found McGowan and Kavanaugh's testimony to be credible.

REPORT AND RECOMMENDATION
PAGE - 3

Dkt. 9, Ex. 21 at 1-4.

PROCEDURAL BACKGROUND

After the trial court denied Petitioner's motion to withdraw his guilty plea and imposed sentence, Petitioner filed an appeal with the Washington Court of Appeals. *See* Dkt. 9, Exs. 1, 13, 14, 16. Petitioner's appellate counsel, Mr. Purtzer, filed an opening brief and identified therein the following two assignments of error: (1) the trial court erred when it denied Petitioner's motion to withdraw his guilty plea because the plea was not knowingly and voluntarily entered; and, (2) Petitioner's trial counsel, Matthew McGowan, provided ineffective assistance of counsel when he failed to give Petitioner access to relevant police reports before he entered his guilty plea. *Id.*, Ex. 16 at 1-2. Petitioner also filed a *pro se* statement of additional grounds for review in which he argued that Mr. McGowan not only failed to provide him access to the police reports, Mr. McGowan also failed to obtain all available discovery in the case, including over 250 photographs taken during the police investigation. *Id.*, Ex. 19.

On October 7, 2019, the Court of Appeals issued an unpublished opinion affirming the trial court's denial of Petitioner's motion to withdraw his guilty plea. *Id.*, Ex. 21. Petitioner thereafter filed a motion for reconsideration, which was denied. *Id.*, Exs. 22, 23. Petitioner next sought review by the Washington Supreme Court, arguing that (1) trial counsel was ineffective for not obtaining and providing all discovery to Petitioner before he entered his plea, and (2) the Court of Appeals erred in affirming the trial court's denial of Petitioner's motion to withdraw his plea because his plea was not knowingly and intelligently entered. *Id.*, Ex 24. The Supreme Court denied review without comment on April 1, 2020, and the Court of Appeals issued a mandate terminating direct review on April 10, 2020. *Id.*, Exs. 25, 26.

GROUNDS FOR RELIEF

Petitioner identifies two grounds for relief in his federal habeas petition which may be summarized as follows:

1. Petitioner's trial counsel rendered ineffective assistance when he failed to obtain all discovery prior to Petitioner entering his plea and failed to review all discovery with Petitioner.

2. Petitioner's guilty plea was not knowingly, intelligently or voluntarily entered because Petitioner's attorney failed to obtain or review discovery with Petitioner and Petitioner therefore did not have all of the information necessary to enter a valid plea.

*See* Dkt. 1 at 6, 8.

DISCUSSION

Respondent concedes that Petitioner properly exhausted his grounds for federal habeas relief by presenting his claims to the Washington Supreme Court for review. Dkt. 8 at 5. Respondent argues, however, that Petitioner is not entitled to relief under 28 U.S.C. § 2254(d) because the state courts reasonably rejected Petitioner's claims on direct appeal. *See id*. at 9-23.

Standard of Review

Federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

REPORT AND RECOMMENDATION
PAGE - 5

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). The Supreme Court has also explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

In considering a habeas petition, this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a

REPORT AND RECOMMENDATION
PAGE - 6

state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## Ineffective Assistance of Counsel

Petitioner asserts in his first ground for relief that he was denied effective assistance of counsel when his trial counsel failed to obtain, provide, and/or review all discovery related to his case before he entered his guilty plea. *See* Dkt. 1 at 6; Dkt. 3 at 6-7. Ineffective assistance of counsel claims arising out of the plea process are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Under *Strickland*, a defendant must prove (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id*. at 688. This requires "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Judicial scrutiny of counsel's performance must be highly deferential. *Id*. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. There is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance. *Id*. In order to prevail on an ineffective assistance of counsel claim, a petitioner must overcome the presumption that counsel's challenged actions might be considered sound strategy. *Id*.

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. *Id*. at 693. In order to satisfy the "prejudice" requirement of the *Strickland* standard in the context of a guilty plea, a petitioner must demonstrate that it is reasonably probable that, but for counsel's errors, "he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The reviewing court need not address both components of the inquiry if an insufficient showing is made on one component. *Strickland*, 466 U.S. at 697.

While the Supreme Court established in *Strickland* the legal principles that govern claims of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate whether defense counsel's performance fell below the *Strickland* standard. *Harrington*, 562 U.S. at 101. Rather, when considering an ineffective assistance of counsel claim on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id*. As the Supreme Court explained in *Harrington*, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*.

Petitioner's ineffective assistance of counsel claim, as presented to the Washington Court of Appeals, was comprised of two parts. The first part, argued by Petitioner's appellate counsel in Petitioner's opening brief on appeal, was that Petitioner was denied effective assistance of counsel when his trial counsel failed to investigate his case by failing to provide discovery to Petitioner for review before he entered his guilty plea. Dkt. 9, Ex. 16 at 10-12. Counsel noted in particular that Petitioner had not been allowed to view the police reports in his case. *Id*., Ex. 16 at 12. Counsel went on to argue that trial counsel's alleged deficient performance was also prejudicial because "a reasonable likelihood exists that the decision of whether Mr. McField

would have entered his guilty plea, had he been allowed to review the discovery, would have been different but for counsel's deficient performance in providing the discovery to Mr. McField." *Id*.

The second part of Petitioner's ineffective assistance of counsel claim, argued by Petitioner in his *pro se* statement of additional grounds for review, was that Petitioner was denied effective assistance of counsel when his trial counsel failed to obtain all of the discovery in his case, in particular 250 photographs of the scene that were taken following the incident.[2] *Id*., Ex. 19 at 1-2.

The Washington Court of Appeals began its analysis of Petitioner's ineffective assistance of counsel claims by identifying the standard applicable to such claims; *i.e.*, that set forth in *Strickland*. *Id*., Ex. 21 at 5-6. The court then went on to reject both parts of Petitioner's ineffective assistance of counsel claim, concluding that Petitioner had not demonstrated deficient performance. As to the first part of Petitioner's ineffective assistance of counsel claim, the Court of Appeals explained its decision as follows:

> McField argues that McGowan failed to investigate his case because he did not provide the police reports to McField before he entered his guilty plea. Not providing independent copies of police reports is not, however, the same as not investigating the case. McGowan estimated meeting with McField at least a dozen times. He brought in two additional attorneys to help investigate and consult on the case. Counsel then conducted witness interviews with "pretty much everyone who was on [McField's] side of the case." As the trial court

---

[2] Petitioner's federal habeas materials do not specifically reference this claim. Petitioner did include in his petition a reference to trial counsel's alleged failure to "obtain all discovery," which could arguably be deemed a reference to the portion of Petitioner's claim on appeal concerning the photographs. *See* Dkt. 1 at 6. Petitioner's memorandum in support of his federal habeas petition contains no argument whatsoever in support of the claim concerning the photographs which is unsurprising given that the memorandum submitted in this proceeding is substantially similar to Petitioner's opening brief on appeal which likewise made no mention of trial counsel's alleged failure to obtain the scene photographs which were the subject of Petitioner's *pro se* claim. *See* Dkt. 3; Dkt. 9, Ex. 16. This Court construes Petitioner's federal habeas petition as incorporating this portion of his ineffective assistance of counsel claim from his appellate papers in order to ensure that all intended claims are addressed, whether or not they were clearly presented in this proceeding.

REPORT AND RECOMMENDATION
PAGE - 9

> found, counsel also met with McField and his father and conveyed the substance of the police reports and witness interviews.
>
> Because McField has failed to demonstrate that McGowan's performance fell below an objective standard of reasonableness, McField's ineffective assistance of counsel claim fails.

*Id.*, Ex. 21 at 6-7.

As to the second part of Petitioner's ineffective assistance of counsel claim, the Court of Appeals explained its decision as follows:

> McField cites to the report of proceedings where McGowan discusses the photographs taken at the scene. McGowan confirmed that he reviewed the "scene photographs" with McField. He also testified that he had taken photos of "the house and where things would have fallen."
>
> McField has not demonstrated that McGowan failed to investigate his case. His argument about McGowan's failure to obtain the photographs is disputed, and this claim does not appear to constitute McGowan's failure to investigate. For these reasons, McField's additional ineffective assistance of counsel claim fails.

*Id.*, Ex. 21 at 7

The record before this Court demonstrates that the Court of Appeals applied the appropriate standard to Petitioner's ineffective assistance of counsel claims and reasonably rejected those claims. Though Petitioner's appellate counsel framed the ineffective assistance of trial counsel claim presented in Petitioner's opening brief on appeal as one alleging a failure to investigate, appellate counsel argued in support of that claim that Petitioner's trial counsel failed to provide the discovery to Petitioner to review before he entered his guilty plea. *Id.*, Ex. 16 at 11-12. As the Court of Appeals correctly pointed out, the failure of trial counsel to provide Petitioner copies of discovery is not the same thing as failing to investigate the case. *Id.*, Ex. 21 at 6. The Court of Appeals went on to reject the suggestion that counsel had not adequately

investigated the case or otherwise provided deficient representation, a conclusion supported by the evidence presented at the hearing on Petitioner's motion to withdraw his guilty plea.

A review of the transcript of the hearing conducted by the trial court demonstrates that Petitioner's counsel, Mr. Purtzer, adduced no evidence at the hearing that would support any contention that Petitioner's trial counsel failed to adequately investigate the case. *See id.*, Ex. 13. The transcript also confirms that though Petitioner did not receive copies of all of the discovery materials and did not read through every page of the discovery materials, Petitioner's trial counsel conveyed the substance of those materials to Petitioner.[3] *See id.* The Court of Appeals' conclusion that Petitioner failed to show deficient performance with respect to the first part of his ineffective assistance of counsel claim is amply supported by the record and constituted a reasonable application of *Strickland*.

Petitioner's *pro se* claim concerning trial counsel's alleged failure to obtain photographs of the scene more closely resembles a "failure to investigate" claim than that presented by his appellate counsel. The Court of Appeals correctly noted, however, that Petitioner's argument that trial counsel failed to obtain the photographs was disputed. *Id.*, Ex. 21 at 7. The transcript of the hearing on Petitioner's motion to withdraw his guilty plea confirms that Mr. Purtzer adduced some testimony from Petitioner's trial counsel about scene photographs. During that testimony, Petitioner's trial counsel stated that he had reviewed scene photographs with Petitioner, though he went on to describe photographs that did not appear to match those presented by Petitioner. *Id.*, Ex. 13 at 52. Mr. Purtzer, who apparently did not at that time have

---

[3] Petitioner's trial counsel testified that he and Petitioner went through the police reports together and that while the two never sat down and went through the numerous pages of discovery all at once, counsel believed that Petitioner "[a]bsolutely" knew what was in there. Dkt. 9, Ex. 13 at 44. The trial court found trial counsel's testimony credible. *Id.*, Ex. 13 at 81.

REPORT AND RECOMMENDATION
PAGE - 11

copies of the scene photographs Petitioner presented on appeal, made no attempt to further clarify the record as to what photographs may or may not have been a part of the discovery. *See id*. Indeed, Mr. Purtzer appeared to be primarily focused on what materials trial counsel had shown to his client and not on whether the discovery trial counsel had received from the State was complete. *See id*., Ex. 13.

The Court notes in this regard that at the hearing before the trial court, Mr. Purtzer offered as an exhibit "discovery" that he had obtained from the attorney who represented Petitioner after his trial counsel withdrew and before Mr. Purtzer appeared in the case. *Id*., Ex. 13 at 11-12. The prosecutor, though not objecting to the exhibit, noted that the exhibit did not constitute a complete set of the discovery that had originally been provided to Petitioner's trial counsel. *Id*., Ex. 13 at 11. While the appellate record appears to show that Petitioner's appellate counsel obtained the photographs Petitioner submitted with his *pro se* brief on appeal from the Tacoma Police Department well after the hearing on Petitioner's motion to withdraw his guilty plea (*see id*., Ex. 19 at 4-46), the record is not sufficiently developed to establish that these photographs were not a part of the original discovery provided to trial counsel. The Court of Appeals' conclusion that Petitioner failed to demonstrate deficient performance in relation to the scene photographs constituted a reasonable application of *Strickland* in light of the evidence in the appellate record.

Because the Court of Appeals resolved Petitioner's ineffective assistance of counsel claims on the deficient performance prong of the *Strickland* standard, it did not reach the issue of prejudice. This Court will nonetheless address the prejudice issue briefly as it reinforces the conclusion that Petitioner is not entitled to relief with respect to his ineffective assistance of counsel claims. Petitioner vigorously asserts that he wasn't allowed to review all discovery

REPORT AND RECOMMENDATION
PAGE - 12

before entering a plea, and that counsel's failure to provide him the discovery prevented him from making a knowing and intelligent plea. However, nowhere in the record does Petitioner identify what information he believes he would have gleaned from directly reviewing the discovery that would have altered his decision to plead guilty. The record makes clear that at the time of his hearing on his motion to withdraw his guilty plea Petitioner, at the very least, had access to the police reports he claims were critical to his decision making process and yet he offered no testimony at the hearing about how any of the information contained therein might have impacted that process. *See id.*, Ex. 13 at 11, 14. Likewise, while Petitioner presented the appellate court with copies of the 250 scene photographs he claims he did not see prior to entering his guilty plea, he does not explain what, if anything, he identified in those photos that would have altered his decision to plead guilty.

Finally, it is important to note that though Petitioner pleaded guilty to two charges for which he admittedly received a substantial sentence, had he not accepted the plea offer he would have faced multiple additional charges that, based on counsel's assessment, could have potentially quadrupled the length of Petitioner's sentence had he gone to trial and been convicted on all counts. Nothing in the record adequately demonstrates that absent counsel's alleged deficient conduct, Petitioner would have foregone the opportunity to plead guilty and would have insisted on going to trial. For all the foregoing reasons, Petitioner's federal habeas petition should be denied with respect to his ineffective assistance of counsel claims.

<u>Voluntariness of Plea</u>

Petitioner asserts in his second ground for federal habeas relief that he did not knowingly, intelligently, or voluntarily enter a plea, and that the trial court therefore erred when it denied his motion to withdraw his guilty plea. *See* Dkt. 1 at 8; Dkt. 3 at 7. This claim is based on trial

counsel's alleged failure to obtain and/or review discovery with Petitioner prior to entry of his plea. *See id*. Petitioner also asserts that he was coerced into entering his plea based upon trial counsel's threat of a potentially lengthy sentence if he went to trial. Dkt. 3 at 7.

Due process requires that a guilty plea be both knowing and voluntary. *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). A defendant who enters a guilty plea on the advice of counsel may only attack the voluntary and intelligent character of the plea by demonstrating that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases. *See id*. at 56-57 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).

The Washington Court of Appeals rejected Petitioner's challenge to the validity of his guilty plea, explaining its decision as follows:

> McField . . . challenges the trial court's conclusion that he knowingly, intelligently, and voluntarily entered into his guilty plea. McField argues that he did not make a voluntary plea because his attorney placed him under undue duress by coercing him to accept the plea deal. He also argues that his plea was not knowing because he never reviewed the discovery and police reports for his case. We disagree.
>
> . . . .
>
> Here, McField acknowledges that he signed the statement of defendant for the guilty plea. When the trial court accepted McField's guilty plea, the court asked McField if he was entering into the plea knowingly, voluntarily, and intelligently, and McField affirmed that he was. The written evidence and oral testimony establish his voluntariness. Although McField testified that he was coerced into signing the plea, and that he did not think he was voluntarily entering into the plea, the court found that "[t]he defendant decided of his own accord to accept the State's plea offer."

REPORT AND RECOMMENDATION
PAGE - 14

> Although McField testified that he did not see the police reports or discovery in his case, based on the testimony of counsel, the trial court found that McGowan conveyed the substance of the reports and other discovery to McField. While McField and McGowan presented conflicting evidence, the court ultimately found McGowan to be credible.
>
> McField has not demonstrated that the trial court abused its discretion in denying his motion to withdraw his plea.

*Id*., Ex. 21 at 4-5.

The record before this Court demonstrates that the Court of Appeals reasonably rejected Petitioner's challenge to the voluntariness of his guilty plea. Prior to entering his plea, Petitioner was facing trial on a substantial number of charges arising out of three separate incidents. Among those charges were three counts of assault in the first degree while armed with a firearm, one count of drive-by shooting, three counts of assault in the second degree while armed with a firearm, and one count of unlawful possession of a firearm in the first degree. *See id*., Ex. 6. Petitioner's trial counsel negotiated a plea agreement with the State which allowed Petitioner to plead guilty to one count of assault in the first degree while armed with a firearm and one count of unlawful possession of a firearm in the first degree, in exchange for a recommended fifteen year sentence. *See id*., Exs. 7, 8, 13 at 47. Trial counsel had advised Petitioner that he believed Petitioner would likely lose at trial and that he could be facing a sentence in the range of 35 to 45 years, with a potential for a sentence as high as 50 to 60 years. *See id*., Ex. 13 at 33-34, 49-50.

Petitioner decided to accept the negotiated plea on the morning trial was to begin. *Id*., Ex. 13 at 50. The trial court thereafter conducted a plea colloquy with Petitioner. *Id*., Ex. 9 at 3-11. During that colloquy, Petitioner acknowledged that he had reviewed the plea documents with counsel and that he understood the contents of those documents. *Id*., Ex. 9 at 3. Petitioner also acknowledged that he understood the rights he was giving up by pleading guilty, and he

REPORT AND RECOMMENDATION
PAGE - 15

denied that anyone had made any threats or promises to get him to plead guilty. *Id.*, Ex. 9 at 3-5, 8. Finally, Petitioner affirmed that the written statement contained in the plea documents, which provided the factual basis for the offenses to which he was pleading guilty, was true. *Id.*, Ex. 9 at 10. These acknowledgements, made in open court, carry a strong presumption of verity. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Petitioner's claim here that he was coerced into entering the plea fails in the face of his own contrary statements at his guilty plea hearing. The fact that Petitioner may have elected to enter a plea, rather than proceed to trial, because of the assessment his attorney provided regarding the likelihood of success at trial and the possible sentence he could face should he elect to proceed to trial cannot reasonably be construed as coercion. And, as discussed above, the record demonstrates that counsel reviewed the substance of the discovery in the case with Petitioner, even if he did not provide Petitioner copies of the actual documents. Petitioner identifies no authority which requires that a criminal defendant have copies of discovery and other relevant evidence literally "in hand" before a valid guilty plea may be entered.

Petitioner fails to demonstrate that the Court of Appeals' decision rejecting his challenge to the voluntariness of his plea was contrary to, or constituted an unreasonable application of, clearly established United States Supreme Court precedent. Accordingly, Petitioner's federal habeas petition should be denied with respect to his second ground for relief.

CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3).

A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that Petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his petition.

## CONCLUSION

For the reasons set forth above, this Court recommends that Petitioner's petition for writ of habeas corpus be denied, and that this action be dismissed with prejudice. This Court further recommends that a certificate of appealability be denied. A proposed order accompanies this Report and Recommendation.

## OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 17, 2021**.

DATED this 24th day of August, 2021.

*S. Kate Vaughan*
S. KATE VAUGHAN
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 17